FAYETTE COUNTY v. N. W. FAISIN'S EX'R.

1. IMPLIED CONTRACT.—Where a party rendered services for which he was to be compensated from the proceeds of the sale of the property on which his labor was expended, for the purpose of enabling the employer to sell it to the best advantage, and after the service was rendered the employer withdrew the property from sale : *Held,* That reasonable compensation could be recovered.
2. SCHOOL LANDS.—Where school lands were ordered to be sold under an act of the Legislature, (act of November 1, 1866,) and preparatory to sale a surveyor was employed to subdivide the lands and make maps, sketches, &c., to be paid for out of the interest of the proceeds of the sale, and the constitutional convention, June 30, 1868, indefinitely postponed the sale of the lands, the surveyor is entitled to recover for his services performed, although the lands were not sold.

APPEAL from Fayette. Tried below before the Hon. I. B. McFarland.

*Teichmuller & Dunn,* for appellant.

*L. W. Moore* and *J. C. Brown,* for appellee.

MOORE, ASSOCIATE JUSTICE.—The police court of Fayette county, having been authorized by a vote of the people to sell the school lands of said county, as provided by the act of November, 1866, entitled "An act to authorize the police court to sell the public school lands belonging to their re-

spective counties," in February, 1867, contracted with N. W. Faisin to have said lands surveyed into suitable tracts of not less than ten nor more than one hundred and sixty acres; to define and mark the lines of said tracts, and to make maps of the same, for the purpose of selling them, as authorized by said law. At the April Term, 1868, Faisin presented to said police court an account for the amount which he claimed to be due him on said contract, and the court allowed the account and ordered it to be paid, with ten per cent. interest thereon, from the first money arising from the payment of interest on the sale of said school lands.

But the convention having, by an ordinance, indefinitely suspended the further sale of public school lands of the several counties of the State, said police court, at its July Term, 1868, ordered that "all proceedings in reference to the sale of the lands aforesaid be indefinitely suspended." And as none of said land had been previously sold, and no sales have been subsequently authorized, there was and is not such a fund as that out of which Faisin's account was ordered to be paid. His executors, therefore, on the 29th of March, 1872, again presented said account to said court, and asked that an order be made for its payment. This the court refused to do, upon the ground that by the law under which Faison was employed to survey said lands, it was enacted that the expenses of surveying, mapping, and selling them should be paid out of the interest arising from their sale.

On the trial of the case in the court below, it was admitted by appellant that the services, as alleged in the petition and shown by the orders of said court, were rendered by Faisin, and that said work and services so performed by him were worth the sum demanded for them. Upon this admission, and the other evidence in the case, a judgment was properly rendered in favor of his executors for the amount for which they sued.

The purpose of the Legislature, in directing that the ex-

penses of surveying, mapping, and selling the public school lands of the several counties of the State should be paid from the interest arising from the sale of the lands, was doubtless to preserve intact the principal fund arising from such sales, and to guard against any part of it being squandered by the County Courts. It could hardly be supposed that the Legislature intended to prohibit the County Courts from paying the expenses incident to the sale of these lands, for which it might contract in any other way than out of the interest arising from such sales. And if we concede that it can fairly be inferred from the nature of the employment, and Faisin accepting the order of the County Court allowing the account and directing its payment out of the first money arising from the payment of interest on the sale of said lands, that it was understood and agreed when the contract was made that it was to be so paid, yet we think it quite clear that when the sale of the lands was indefinitely postponed, and no such fund as that from which payment was to be made could accrue, appellant became directly liable for its payment. It would be most unreasonable and inequitable to hold, that when a party has rendered services for which he is to be compensated from the proceeds of the sale of property in and about which his labor has been expended, for the purpose of enabling the other party to sell it to the best advantage, that he can make no claim for compensation for such services if the party at whose instance they are performed should afterwards decline to sell the property and appropriate it to other purposes.

The judgment is affirmed.

AFFIRMED.