### REA et al. v. LUSE et al.  (No. 244–3326.)*

(Commission of Appeals of Texas, Section A. June 1, 1921.)

**1. Fraud ⊂⊃41 — Vendor's complaint held to state cause of action for deceit.**

Vendor's complaint, in an action against purchaser, alleging that purchaser misrepresented that maker of notes received in part payment of the purchase price was solvent, that deed of trust had been executed on certain land to secure such notes, and that such land was of certain value, held to state a cause of action for deceit.

**2. Fraud ⊂⊃59(3)—Measure of damages.**

In vendor's action against purchaser for deceit in inducing execution of land contract by misrepresentations that maker of notes received in part payment of purchase price was solvent, that deed of trust had been executed to secure such notes, and that such land was of certain value, vendor's measure of damages was the difference between the value of the land parted with and the value of what he received in the transaction.

**3. Liens ⊂⊃7—Purchaser, who accepted notes in part payment on strength of recitals as to security for notes, entitled to equitable lien.**

Where notes recited that they were secured by a deed of trust on certain land, and where deed of trust purporting to secure payment of such notes was forged, one who received notes in part payment of the purchase price for other land on the strength of the recitals in notes and deed of trust as to the execution of such deed of trust to secure notes held entitled to an equitable deed of trust lien on the land, though no deed of trust was in fact executed.

**4. Vendor and purchaser ⊂⊃259 — Vendor held not entitled to vendor's lien on other land to secure payment of third person's notes transferred to vendor in part payment of purchase price.**

A vendor who accepted from purchaser in part payment of the purchase price third person's notes, which recited that they were secured by deed of trust on other land, and did not appear to be purchase-money notes, held not entitled to a vendor's lien on such other land to secure payment of the notes.

**5. Appeal and error ⊂⊃1094(5) — Supreme Court bound by finding of Court of Civil Appeals on conflicting evidence.**

The Supreme Court is bound by the finding of the Court of Civil Appeals, reversing judgment of trial court entered on verdict of jury, where evidence was conflicting.

Appeal from Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Mrs. Mary L. Waller Rea and husband against Mrs. P. L. Luse and husband, in which defendants set up a cross-action interpleading A. F. Luse as one of the defendants. Judgment for defendants on the cross-action was reversed, and the cause was remanded by the Court of Civil Appeals (207 S. W. 942), and defendants appeal. Judgment of Court of Civil Appeals affirmed.

Kimbrough, Underwood & Jackson, of Amarillo, for appellants.

W. H. Russell, of Hereford, for appellees.

TAYLOR, P. J. The case presented for review grew out of an exchange of properties between A. F. Luse and Mrs. P. L. Luse on one hand, and Mrs. Mary Waller Rea on the other. Mrs. P. L. Luse, joined pro forma by her husband, sued Mrs. Rea, joined pro forma also by her husband, for breach of warranty of covenants contained in a deed conveying Mrs. Rea's land to Mrs. Luse as a part of the exchange referred to. It is not necessary to state the nature and result of the suit filed by plaintiffs, as judgment on the direct action was not appealed from.

The case for review arises on the cross-action set up by Mrs. Rea against plaintiffs in the direct action, and A. F. Luse, who was interpleaded as one of the defendants in the cross-action. It is alleged in the cross-petition that Mrs. Rea agreed to sell to A. F. Luse her two sections of land in Deaf Smith county subject to the indebtedness thereon, in consideration that he pay her therefor $14,000 in notes executed by O. H. Bennett, secured by a vendor's lien on 5½ sections of land in Culberson and El Paso counties; that Luse agreed to procure from Bennett a deed of trust on the land covered by the vendor's lien to further secure the payment of the notes; that Mrs. Rea was induced to execute the contract by Luse's statement to her, falsely made, that he had sold to Bennett the lands to be embraced in the deed of trust for a total consideration of $28,000, and that the $14,000 in notes represented one-half of the actual purchase price; that the lands were reasonably worth $28,000, and their market value was at least that amount; that before the final consummation of the contract Luse represented to Mrs. Rea that he had procured

the deed of trust from Bennett in accordance with his agreement. It is further alleged that the lands embraced in the purported deed of trust were waste lands, worthless, and without market value; that the purported signature of Bennett was not in fact genuine, and was a forgery. It was alleged that the value of the lands and improvements contracted to be conveyed by Mrs. Rea to Luse was not less than $50,000, and that the incumbrances to which they were subject aggregated about $25,000; that the consideration pretended to be given by Luse for Mrs. Rea's equity of $25,000 was the Bennett notes for $14,000 and $168 in cash; that Bennett was insolvent; and that the security to the notes was worthless.

While the evidence discloses that Mrs. Rea received other property in the trade besides the Bennett notes, no complaint is made that she was deceived in any matters other than those relating to the value of the notes.

The cross-petition sets out that A. F. Luse in his dealings with Mrs. Rea acted for his undisclosed principals, Mrs. P. L. Luse and her husband, and alleges the ratification by them of the terms of the contract and the fraudulent acts of A. F. Luse, and the acceptance by them of the benefits thereof; also that upon the pretended consummation by A. F. Luse of the obligations devolving upon him under the terms of the contract, he cause Mrs. Rea to convey her two sections of land in Deaf Smith county to Mrs. P. L. Luse. These allegations were made the basis for interpleading A. F. Luse as a party defendant. The prayer was for damages in the sum of $25,000. The answer to the cross-action consisted of general and special exceptions, and a general denial.

Mrs. Rea testified that the land conveyed by her to Mrs. Luse was worth $51,200, and that she conveyed it subject to an indebtedness of about $29,000; that she received therefor $14,000 in notes executed by O. H. Bennett, $800 in money, and 160 acres of land in El Paso county. She testified also that A. F. Luse represented that Bennett was solvent and that the land securing the payment of the Bennett notes was worth from $7 to $8 per acre, and that the notes represented one-half of the value of the land; that some time in the spring of 1917, but prior to the consummation of the contract, she had the Bennett notes and trust deed forwarded to her at her bank in Del Norte, Colo.; that she endeavored to sell the notes, but failed; that she then became a little suspicious of the transaction, and returned to Amarillo, Tex.; that she there had a talk with Bennett, in the course of which he promised to pay the notes; that later, in the early part of June (1917) she sent her representative to Hereford for the purpose of finally closing the trade, which he did, delivering at that time the deed from Mrs. Rea to Mrs. Luse; that she would not have executed the deed had she known Bennett was insolvent; that she then tried to sell the notes in Amarillo, and, failing to do so, made inquiries concerning Bennett, learning that he was notoriously insolvent; that subsequently she had a conversation with Bennett in which he admitted signing the notes, and promised to pay them; but in which he further stated that he did not execute the deed of trust, and that it was a forgery.

Mrs. Rea testified also that she later traded the Bennett notes for two houses and lots in Shamrock, Tex., one in Clarendon, Tex., and 160 acres of land in New Mexico; that she endorsed the notes, the purchaser having required her to do so before he would take them in the trade.

There was no evidence bearing upon the allegations of the cross-action other than Mrs. Rea's, which is summarized above, and certain documentary evidence introduced by her in support of her oral testimony. The deed from A. F. Luse to Bennett is not in evidence.

It was agreed in open court that no vendor's lien was retained therein, or in the Bennett notes, on the land described in the deed of trust. The deed of trust is in evidence, as are also the four Bennett notes aggregating the sum of $14,000, payable to Mrs. Rea, and signed by Bennett. The notes contain the recital that their payment is secured by a deed of trust lien on the land described in the deed of trust, but no reference is made to a vendor's lien. There is an allegation in the cross-petition that the deed of trust dated March 5, 1917, was filed for record March 19 of the same year in the records of Culberson county, Tex. There is no allegation that it was recorded in El Paso county.

The case was submitted on special issues, in response to which the jury found that A. F. Luse, as an inducement to Mrs. Rea to make the contract, represented that O. H. Bennett was financially responsible for the amount of the Bennett notes; that she relied upon the representations made by A. F. Luse; and that they were a material inducement to her to enter into the contract, and were untrue; that Bennett was insolvent, and that the deed of trust, purporting to have been executed by him and delivered to Mrs. Rea, was a forgery. No other issues were submitted by the court, nor was the submission of others requested.

The trial court entered judgment on the cross-action in favor of Mrs. Rea for the face value of the Bennett notes. It is apparent from the judgment recitals that the trial court found as a basis for the judgment that the notes were worthless.

The Court of Civil Appeals was of opinion that the pleadings and evidence present two groups of fact, which, if taken separate-

ly, would respectively make the cause an action for deceit on one group, and for breach of contract on the other; that in the event the case be viewed as an action for deceit the measure of damages would be that announced in George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456; that if the case should be viewed as one involving a breach of contract by Luse, Mrs. Rea might recover for the breach, and the measure of her recovery would be the difference in the value of notes actually received and their value had they been secured as contracted for; that if the failure of the notes to be secured was the only ground of recovery, a suit for breach of contract and the application of the consequent measure of damages would be proper. The court's conclusion was that the cross-action so combined the facts as to make it in effect an action for deceit. It is stated in the opinion that the value of the 160 acres conveyed to Mrs. Rea in the deal was not proved, and that no evidence of the value of the Bennett notes was offered, except that bearing upon Bennett's insolvency and his failure to execute the deed of trust.

The Court of Civil Appeals was also of opinion that before Mrs. Rea could recover the face value of the notes under the facts stated, it devolved upon her to show that they were worthless, stating in this connection that the record pointedly suggests an equitable lien against the land described in the deed of trust, and also an equitable vendor's lien; and that a court of equity might be authorized to decree an equitable lien against the land. The conclusion of the Court of Civil Appeals, contrary to that of the trial court, was that the evidence was not sufficient to justify a conclusion that the notes were wholly worthless, and that the cause should therefore be reversed and remanded for another trial. 207 S. W. 942.

[1] The gravamen of the complaint is deceit. Plaintiffs in the cross-petition apparently so viewed their cause of action. The matters complained of are the fraudulent acts of A. F. Luse that induced Mrs. Rea to part with her land. Mrs. Rea did not attempt to rescind her contract and tender back the notes and property received therefor. In this important particular the case is unlike Bank of Miami v. Young (Com. of Apps.) 208 S. W. 656, cited by plaintiffs in error. She did not seek to establish an equitable deed of trust lien on the land agreed to be given as security. She proceeded, as was her right, to sell the notes, after having been advised by Bennett that the deed of trust was a forgery, and set up this cross-action for damages. The trial court also apparently viewed the action as one grounded in deceit, as he submitted to the jury only such special issues as would aid in ascertaining whether or not the allegations of fraud were true. The gist of the complaint is that Luse traded Mrs. Rea, among other things, unsecured and worthless notes for her land, fraudulently inducing her to accept them, to her damage, under the belief that they carried the security agreed upon, to wit, a deed of trust executed by Bennett.

[2] The measure of damage in such case is the difference between the value of that parted with by the party defrauded, and that received (George v. Hesse, supra), and is the measure that should have been applied herein by the trial court. Whether this rule was applied by the trial court, or whether the judgment is the same as would have been reached by its application, in view of our conclusion as to the proper disposition to make of the case in the state of the record as we find it, need not be determined.

There is no finding by the jury of the value of any of the property. The evidence was undisputed that Mrs. Rea's equity in the land conveyed by her was worth about $22,000. There is evidence tending to prove that the Bennett notes were worthless. There is also evidence tending to prove that they had some value.

[3, 4] The fact that Mrs. Rea traded the notes for other property is a circumstance tending to prove they had value; nor does the fact that she indorsed them establish conclusively that they were without value. The Court of Civil Appeals is of opinion that the recitals in the trust deeds and notes are such that an inference could be drawn that an equitable deed of trust, and also vendor's lien arose, that might have been enforced by Mrs. Rea in a court of equity. We concur in the holding with respect to the equitable deed of trust lien, but not as to the vendor's lien. It does not appear from the record that the Bennett notes were purchase-money notes. On the other hand, the agreed statement of facts, which is no more, practically, than an agreement as to what the testimony was, contains the ambiguous statement that Luse stated the notes represented one-half of the value of the land. We think, however, the inference that an equitable deed of trust lien might have been enforced by Mrs. Rea is not material in this suit, except as a circumstance tending to show what the value of the notes was while in the hands of Mrs. Rea. The recital in the notes that their payment was secured by trust deed might have tended to enhance their market value, and was probably weighed by the trial court in determining their value. Mrs. Rea disposed of the notes before bringing suit, having elected to sue for damages for fraud, rather than attempt to foreclose a lien, or rescind and sue for breach of contract. In such a suit the recitals in the notes creating a lien as it were by estoppel, could have had no bearing except upon the issue of value.

[5] The Court of Civil Appeals found that the evidence was not sufficient to justify the conclusion that the notes were wholly worth-

less. As there was evidence that the notes had some value, as well as evidence that they were worthless the Supreme Court is bound by the finding. Griffis v. Payne, 92 Tex. 293, 47 S. W. 973.

The judgment of the trial court on the cross-action recites that it is for the face value of the notes, which precludes the idea that the amount of the damage may have been ascertained upon any other theory than that the notes were worthless. There was left therefore no basis for an affirmance of the trial court's judgment, such as might have existed if the judgment had been silent as to the finding upon which it was rendered. Under this state of the record, the Court of Civil Appeals, entertaining as it did the view that the evidence was insufficient to justify a conclusion that the notes were wholly worthless, could not properly make any other disposition of the cause than to reverse and remand it for another trial.

Defendants in error insist in their briefs filed in the Court of Civil Appeals that the judgment should not be permitted to stand, on the ground that the only evidence of forgery offered on the trial was the hearsay evidence of Mrs. Rea that Bennett told her the deed of trust was a forgery. It appears that this testimony was adduced on cross-examination by defendants in error. They urged an objection to its admission, which was sustained. The objection was then withdrawn and the testimony permitted to stand. On the following day the objection was renewed in the form of a motion to strike, which was overruled. The assignments raising the question of whether the judgment in this state of the record should be permitted to stand was not passed upon by the Court of Civil Appeals. As this question and the questions raised by the other assignments of error in the Court of Civil Appeals will doubtless not arise on another trial, it is not necessary that they be determined.

We recommend that the judgment of the Court of Civil Appeals, directing that the cause be reversed and remanded for another trial, be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.